Robert Eugene MILLERBERG and Dorothy Millerberg, Plaintiffs and Respondents,

v.

William S. STEADMAN and Nelda Steadman, and J. H. Allen Corp., Defendants and Appellants.

No. 17308.

Supreme Court of Utah.

March 16, 1982.

Kenneth M. Hisatake, Salt Lake City, for defendants and appellants.

Stewart M. Hansen, Jr., David R. Olsen, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice:

This is an appeal from an order of the district court specifically enforcing a settlement agreement between the parties. The action in the trial court was to divide the assets of a family corporation, the J. H. Allen Corporation. The assets of the corporation consist of a large ranch, including buildings, wells, equipment, other personal property, 15,000 acres of fee land, and 15,000 acres of leased land. Dorothy Millerberg and Nelda Steadman, daughters of J. H. Allen, each inherited 50% of the J. H. Allen Corporation. After they and their families fell into irreconcilable differences as to how the ranch should be managed, the Millerbergs filed this action for an involuntary dissolution of the corporation pursuant to Utah Code Ann., 1953, § 16–10–92, and a partition of the assets in kind.

The parties entered into a settlement agreement at a pre-trial conference. Pursuant to the agreement, the Millerbergs were to divide all the assets of the corporation into two "packages," and the Steadmans were to have the first choice as to which "package" they would elect to receive. The parties were also to cooperate in obtaining a tax-free division of the assets of the corporation pursuant to Section 355 of the Internal Revenue Code. As agreed, the Millerbergs divided the assets into two packages, but the Steadmans refused to make a choice.

On an order to show cause, the trial court held that the Millerbergs had fully complied with the settlement agreement and that the Steadmans had breached the agreement by failing to make a selection. The trial court ordered the Steadmans to select one of the two packages within ten days or forfeit their choice to the Millerbergs. The Steadmans refused, and the Millerbergs then made their choice. The Steadmans also refused to sign a request for an IRS revenue ruling, despite a court order directing them to do so.

On appeal, the Steadmans contend that the trial court erred in ordering them to make a selection, and in allowing the Millerbergs to make a selection after Steadmans' refusal to do so. Steadmans claim that they could not make a choice because the division of the property was not equitable, there was a failure to provide sufficient specificity for such matters as necessary access easements and rights-of-way, and the packages provided for joint and common use of certain assets rather than complete separation. Steadmans further contend that it was error to require them to execute the request for a Revenue Ruling because there was a misstatement of facts contained in the application.

There was no ambiguity in the agreement for one party to divide the assets and the other to select first. Given the size of the property and the necessity to provide access to water and various easements, it was, perhaps, inevitable that there would be some unresolved problems in any division. The division clearly did not resolve all possible disputes. The unresolved details, which are now urged by Steadmans to justify their refusal to comply with the agreement, affect both parties. If and when those details give rise to disputes, they will be in the context of specific circumstances, and the court should be better able to deal with them. In any event, the unresolved issues that exist are not sufficient to preclude enforcement of the stipulated agreement, and the Steadmans, who had first choice in the selection and refused to exercise that

choice, cannot now claim that the division was basically unfair.

The settlement agreement in this case was entered into in the presence of the trial court. There is no claim of fraud or imposition. The unresolved issues now relied on were, for the most part, not presented to the trial judge as an obstacle to the performance of the agreement. Under the circumstances of this case, and the reasons presented by the appellants to the trial judge to excuse their non-performance, the trial judge acted within the ambit of necessary discretion in summarily enforcing the settlement agreement. See *Robinson v. State Department of Natural Resources*, Utah, 620 P.2d 519 (1980); *Tracy Collins Bank & Trust Co. v. Travelstead*, Utah, 592 P.2d 605 (1979).

We have no doubt that the district court, upon a proper showing, would permit any necessary amendment to the request for an IRS ruling if necessary to avoid a misstatement of fact.

Affirmed. Costs to respondents.

HALL, C. J., OAKS, J., and JAMES S. SAWAYA, District Judge, concur.

HOWE, Justice (dissenting):

I dissent. I do not believe that the settlement agreement proposed by the plaintiffs should be specifically enforced against the defendants. I base my position on the premise that the parties at the pretrial conference contemplated and agreed to a "division" of the assets of the corporation. I do not find any mention or reference in the record to a continued joint use of any of the property which the proposal submitted by the plaintiffs contains. The following is a partial transcript of the proceedings at the pretrial conference:

> Mr. Olsen: [Counsel for plaintiffs]: Mr. Steadman [one of the defendants], as I understand your offer, you would be agreeable to this method of *dividing* the ranch, would agree to be bound thereby. The proposal would be that the Millerbergs would submit to the Steadmans a proposed *division* of the lands—excuse

me, of the ranch, including the real property and personal property, personal property including—the personal property including the cattle as well as the equipment; the real property including the fee land as well as the leasehold land.

> Mr. Steadman: Yeah.

> Mr. Olsen: Mrs. Millerberg will make that list and take it to the Steadmans. The Steadmans will have first choice as to which portion they want of that *division*, selecting either A or B, one or the other parcel.

> The Court: Let's see. She's going to *divide* it and submit them two lists, and they can then select which list they want?

> Mr. Olsen: That's correct.

> \*   \*   \*   \*   \*   \*

> The Court: That property includes not only that property which you all own *but that which is leased*, and fee meaning what you own outright.

> Mr. Steadman: Yes. [Italics added.]

Although the parties stipulated and agreed to a division of the assets, when the plaintiffs submitted the two packages there was no full and complete division of the assets. The proposed division included joint use and joint ownership of wells, the creation of tenancies in common in property in Wasatch County, as well as in other contracts and assets, and proposed alternating use of certain leased land of the corporation. Clearly, this proposal submitted by the plaintiffs did not conform to the stipulation of the parties.

This nonconformity of the packages proposed by the plaintiffs is important in this case because the parties have tried since 1974 to conduct a joint operation of the ranching business. This attempt failed and the present action came as the culmination of that failure. The defendants elected to seek a dissolution of the corporation and a partitioning of the assets according to their respective stock ownership.

I appreciate that continued joint use of some of the assets may be more practical than attempting to divide them but that is not what the parties agreed to. They

agreed to a division and the defendants should not be required to perform an agreement that they did not make.

It is no answer that the defendants had the first choice in the selection of the packages. The packages were not structured according to the stipulation and agreement of the parties and defendants should not be required to accept a package of a different form and nature than they agreed to.

Counsel for the defendants, upon receiving the proposal, promptly notified counsel for the plaintiffs of the defendants' objection. On January 29, 1979, counsel wrote, "The Steadmans find the proposal unsatisfactory in that the proposed division is not truly a division of property .... The common use of land and facilities has been the source of controversy for all of these years and we would not be accomplishing what we wish to accomplish by common use and joint ownership indefinitely. It is our position that the division of property and assets should be such as to eliminate any future common use or joint ownership on property, except perhaps for the mineral leases, the proceeds of which can be easily divided annually."

This objection to continued joint use and joint ownership and continued working arrangements between the two parties was reiterated in a subsequent letter dated February 2, 1979 from counsel of defendants to counsel for plaintiffs. At the hearing held March 6, 1979 on the plaintiffs' order to show cause to compel the defendants to make a selection between the two packages, these letters were before the trial court. Counsel for the defendants made very clear his objection to the proposal submitted by the plaintiffs because it did not provide for a "clean break" between the two parties. This objection was again made clear by counsel for defendants on a further hearing held in the court below on August 28, 1980. The defendants have not waived their right to object.

I agree with the majority opinion that it may have been inevitable that there would be some unresolved questions in defining the exact location of easements for water and for access to other lands. However, in my mind those questions, are quite separate and apart from the insistence of the trial court that the defendants agree to a continued joint ownership of certain assets and continued joint use of others.