**Robert D. KLEIN, Plaintiff and Appellant,**

v.

**Mary Avalon KLEIN, Defendant and Respondent.**

**No. 13994.**

Supreme Court of Utah.

Dec. 16, 1975.

Orrin G. Hatch, of Hatch & Plumb, Salt Lake City, for plaintiff-appellant.

Robert S. Campbell, Jr., and James P. Cowley, of Watkiss & Campbell, Salt Lake City, for defendant-respondent.

CROCKETT, Justice:

This appeal is sequel to *Klein v. Klein*, 30 Utah 2d 1, 511 P.2d 1284. It attacks a supplemental decree of the district court which adjusted the financial and property interests of the parties.

The plaintiff's first line of attack is: that the district court having rendered its judgment in May 1972; and that judgment having been affirmed by this court in July 1973, it became final and absolute; and that the trial court could not properly change or modify that decree except for subsequent change in circumstances. The correctness of that proposition under usual circumstances and as applied to a definite and final judgment and decree in a divorce action, to the end that the same matters cannot be litigated anew, is acknowledged.[1] However, from what is said below, it will be seen that that is not the type of decree we are concerned with here.

Other basic facts are set forth in the prior decision. It is material here to recite only that these parties were married in 1953; that they became the parents of three children; that the plaintiff has a net income of about $24,000 per year; that the defendant has an earning capacity of about $3,600 per year, but is presently unemployed; and that the court awarded $300 per month alimony and $100 support money for each child.

None of the foregoing facts is in controversy here. The dispute is over division of very substantial assets and property which had been built up during the marriage.

In the original divorce case the trial judge found their total net worth to be $225,000; and attempted to award defendant about one half by giving her the family home, valuing it at $103,000, plus a Chevrolet, and the proceeds from the sale of four lots, valued at about $6,000. But it is apparent from the findings and decree that the court was not entirely satisfied with the arrangement arrived at. So instead of making a definite and final disposition thereof he included this somewhat unusual provision as the final paragraph of the decree:

The court further *retains limited jurisdiction* if within one year either party

proves to be *suffering serious financial distress* because of this decree based on decisions and ensuing developments arising therefrom *not capable of evaluation and effect at this time, the court will review its ruling* and determine whether modification should be made.

On review of the case on appeal, this court also had apprehensions about the valuation of the property and the allocation thereof, but decided not to wrestle with that controversy because of the reservation in the decree just recited, which would give the trial court a further opportunity to deal with that situation. This is shown by the following language from the decision:

The Judge who tried this case has retired and another Judge will hear any future matters.

If the Decree causes financial distress, the ruling made can be reviewed if within one year after final judgment either party requests it.

Another possible reason for having the matter looked at within a year is the distribution of the assets.

The decision of the Court *was based upon an assumption* that the net value of the assets of the plaintiff was $225,000.-00 . . . .

Having confidence in the integrity of our trial courts and the ability of the judge to review the matter if presented to them, *we affirm the judgment rendered and leave it to the lower court to determine if a modification should be made.*

After the remand, the defendant, on October 25, 1973, filed a "Petition for Review of Economic Matters and Modification of the Decree" supported by affidavits and proffer of proof. In connection with an order to show cause issued thereon, the trial court[2] indicated his view that under the prior decree and the decision of this

---

1. *Osmus v. Osmus,* 114 Utah 216, 198 P.2d 233; *Gale v. Gale,* 123 Utah 277, 258 P.2d 986.

2. This order was entered by Hon. James Sawaya; and the subsequent proceedings and the amended decree appealed from were handled by Hon. G. Hal Taylor.

court it was his conclusion that "serious financial distress is a relative matter" and that whether the defendant was so distressed could not be determined without reviewing the whole economic situation of these parties.

If we look at the total situation, including the substantial property interests and the complex financial situation of these parties, together with the facts that the original decree did not purport to make the usual final disposition thereof, but contained the reservation recited above, we see nothing unreasonable or improper in the just stated conclusion of the trial court. The circumstances here distinguish this case from those relied on by plaintiff which hold that a final decree cannot be modified except for a change of circumstances. Moreover, in this situation we see no reason why the court in its effort to do equity between these parties could not make whatever corrections or adjustments in the decree it deemed necessary to carry out that purpose.

Consistent with that objective, there followed extensive discovery procedures, and a hearing of several days' duration, at which both parties presented extensive evidence and the testimony of experts on valuations; and thereafter submitted their respective memorandums and proposals as to the disposition to be made of their financial affairs. Consequent thereto, the trial court on November 11, 1974, made findings that the value of the assets was $2,037,535.63, less liabilities of $288,725.65, with a resulting net worth of $1,748,809.98. Of this it awarded to the plaintiff properties valued at $1,121,471.63, required him to discharge obligations of $189,869, thus giving him properties of net value $931,602.63. To the defendant he awarded properties valued at $842,144, required her to discharge obligations of $98,856.65, a net award to her of $743,387.35.

Four days after the November 11, 1974, supplemental decree, plaintiff filed his objections thereto and motions for other relief and/or a new trial. A hearing on these motions began on Friday, December 6, 1974, and continued on Monday, December 9. During the noon recess respective counsel engaged in discussions and apparently arrived at terms of settlement based on an offer of the defendant. When court convened at 2:00 p. m. defendant's counsel orally stated into the record the terms thereof, which involved reference to certain paragraphs of the November 11, 1974, judgment.

Inasmuch as it is the position of the plaintiff that he repudiates the stipulation, the following is noteworthy. A part of the record, relied upon by him in support of his position, is:

> THE COURT: All right. Mr. Klein, you have heard your counsel read into the record, part of it by reference to paragraphs. I don't know whether you have been able to follow it or not.
>
> MR. KLEIN: I haven't followed it, Your Honor.
>
> THE COURT: Do you understand it?
>
> MR. KLEIN: I am relying on my counsel. At this point, I haven't been able to read it.

As opposed to the foregoing, a part of the record upon which the defendant places reliance is the following response of the plaintiff which occurred later:

> By way of the record, I accept the stipulation and I so understand. Spoken by Robert D. Klein.

Speaking in generality, the offer made on the defendant's behalf which was then agreed to by the plaintiff and his counsel reduced the properties being awarded to the defendant in the amount of about $200,000 and increased the value of properties being awarded to the plaintiff in that amount. Subsequent thereto, on December 18, 1974, the trial court made further findings and entered a decree in conformity with the stipulation, and from which this appeal is taken.

Plaintiff's arguments that he should not be bound by the stipulation are: that he

did not understand the goings-on at the time it was presented to the court; that it was his impression that he was obliged to indicate agreement so that negotiations could continue and that the stipulation would be reduced to writing for his examination before it was confirmed and relied on; but that the next day, when he realized what had been done, he immediately notified his counsel, who in turn notified opposing counsel and the trial court that he would not so agree; and that this was done before the amended order was entered.

■ Plaintiff advances the proposition that it would be neither fair nor proper to enter a "consent decree" purporting to be based on the agreement of a party who does not agree thereto at the time of final submission to the court. This appears to be a sound proposition when applied to appropriate circumstances.[3] But it is also true that the same rules apply to binding parties to such an agreement as apply to any other agreement. If there is any justification in law or equity for avoiding or repudiating a stipulation, and he timely does so, he is entitled to be relieved from it, otherwise not.

■ Proceeding beyond what has just been said, we make several observations about this stipulation: the first is that the issue as to whether plaintiff agreed to and should be bound by the stipulation was one of fact for the trial court to determine; and it was not convinced that the plaintiff did not understand and voluntarily agree to the stipulation.

■ This would seem to sufficiently settle the issue. But even if it be assumed, as the plaintiff contends, that he either did not understand and/or was subjected to duress in agreeing to the stipulation; or that his agreement was timely and properly withdrawn, these further observations are applicable: It is the established rule that a stipulation pertaining to matters of divorce, custody and property rights therein, though advisory upon the court and would usually be followed unless the court thought it unfair or unreasonable, is not necessarily binding on the court anyway. It is only a recommendation to be adhered to if the court believes it to be fair and reasonable.[4] In addition to all of the foregoing, there is no reason that the trial court cannot consider what was proposed by the parties as a stipulation, and what was said by them or their counsel about it, as part of the total facts and circumstances upon which to fashion what in his judgment is a just and equitable decree.

■ Under the circumstances shown, particularly the fact that upon his analysis of the total circumstances the court indicated in his judgment of November 11, 1974, that the defendant should have $200,000 more in assets than the present decree gives her, and the plaintiff $200,000 less, it is obvious that the trial court did not regard this latter allocation of assets as in any degree unjust or inequitable to the plaintiff. Consistent with the latitude of discretion necessarily allowed to the trial judges in dealing with problems of the character here involved, we are not persuaded that we should disturb the decree.[5] (All emphasis herein added.)

Affirmed. Costs to defendant (respondent).

HENRIOD, C. J., ELLETT, and TUCKETT, JJ., concur.

MAUGHAN, Justice (dissenting).

3. See *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288; *Van Donselaar v. Van Donselaar*, 249 Iowa 504, 87 N.W.2d 311 (1958).

4. *Openshaw v. Openshaw*, 102 Utah 22, 126 P.2d 1068; *Callister v. Callister*, 1 Utah 2d 34, 261 P.2d 944.

5. See *Pinion v. Pinion*, 92 Utah 255, 67 P.2d 265; *MacDonald v. MacDonald*, 120 Utah 573, 236 P.2d 1066; *Wiese v. Wiese*, 24 Utah 2d 236, 469 P.2d 504.

For the following reasons, I dissent. The judgment here is based on what is called a stipulation of the parties.

The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment.[1]

This general rule, in my view, is dispositive of the matter before us. There was no stipulation, because one of the parties withdrew consent prior to judgment. The withdrawal was seasonable, and prior to any change of position by the parties, in reliance on the terms of the proposed agreement.

Two well-reasoned cases[2] deal specifically with this general rule. In *Burnaman* it was said:

A valid consent judgment cannot be rendered by a court when consent of one of the parties thereto is wanting. It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court.

In *Van Donselaar,* it was the court's opinion that:

If no agreement was in fact made, or equally if one of the parties had refused to be bound by it, to the knowledge of the court, then the court had no right to enter a consent judgment.

For the same reason, I think the court had no right to refuse to allow plaintiff's trial counsel to withdraw, until after the judgment had been rendered.

---

1. 49 C.J.S. Judgments § 174b, page 311.

2. *Burnaman v. Heaton,* 150 Texas 333, 240 S.W.2d 288, 291 (1951) ; and *Van Donselaar v. Van Donselaar,* 249 Iowa 504, 87 N.W.2d 311, 313 (1958).