**Carol Ann Barker BROWN, Plaintiff and Appellant,**

v.

**Bryant Jerome BROWN, Defendant and Respondent.**

**No. 860125–CA.**

Court of Appeals of Utah.

Oct. 21, 1987.

David A. McPhie, Salt Lake City, for plaintiff and appellant.

B.L. Dart, Salt Lake City, for defendant and respondent.

Before DAVIDSON, GREENWOOD and ORME, JJ.

DAVIDSON, Judge:

Plaintiff appeals from an order relative to the modification of a decree of divorce which treated a putative stipulation as dispositive of all issues. We reverse and remand.

The parties were married on June 4, 1969. Three children were born to the Browns; all of whom are still minors at the time of this appeal. Defendant is a physician with a practice located in Salt Lake City. Plaintiff possesses a bachelor's degree and was not employed at the time of divorce. The amended decree of divorce was signed on February 21, 1980. The salient provisions were: plaintiff would have custody of the children subject to specified visitation rights; defendant would pay child support in the amount of $300.00 per child per month for a total of $900.00 per month; defendant would pay $900.00 per month as alimony which would cease if plaintiff remarried or cohabited with a male; and plaintiff would not be able to seek an increase in support or alimony for 36 months after the date of the decree.

On March 1, 1983, plaintiff filed a petition for modification of the decree of divorce which was based on a significant

increase in defendant's gross income and a material change in plaintiff's circumstances. The two most important requests for modification were for increases in alimony and child support to $1,500.00 per month and $500.00 per child per month, respectively. Defendant counterpetitioned for termination of alimony and for expanded visitation rights.

During the next fifteen months discovery and settlement negotiations took place. Plaintiff's deposition was scheduled for June 5, 1984, in preparation for a trial set for August 14, 1984. Apparently plaintiff's counsel caused opposing counsel to believe that the issues had been resolved satisfactorily and that the time scheduled for the taking of plaintiff's deposition could be used to record the agreement. The parties and their respective counsel met on the scheduled date and recorded the agreement at issue before a certified shorthand reporter. In addition to visitation arrangements, the agreement provided that, commencing July 1984, alimony would be reduced from $900.00 per month to $500.00 per month and would continue for two years at the lower level before terminating. Child support was increased from $300.00 per child per month to $500.00 per child per month with conditions specified when such support would also terminate. The record indicates that both counsel and defendant spoke but that plaintiff said nothing during the proceedings. The agreement was subsequently reduced to writing and sent to plaintiff's counsel. Beginning in July 1984, defendant began paying the total amount set forth in the agreement, which payments were accepted by plaintiff.

Plaintiff contends that she was not given a copy of the written agreement until August 1984. She immediately attempted to consult with her counsel but was unable to see him until late in September. At that meeting, plaintiff stated that she believed the agreement to be unfair and refused to sign it. Her counsel withdrew on November 7, 1984.

On February 14, 1985, defendant filed a motion for an order approving and enforcing the settlement agreement. On February 25, 1985, plaintiff filed an affidavit which stated that her former counsel had assured her that increases in alimony and child support were justified and that he was confident she would win major increases in both; that she was unaware of the tenor of the proposed settlement agreement until the day scheduled for her deposition; that her former counsel informed her that he told opposing counsel that she would agree to the settlement; that she was "shocked, dismayed, dissapointed [sic], and confused" by her counsel's change in position; that she didn't recall speaking at the proceeding; and that she refused to sign the written agreement. A hearing on defendant's motion was held before the Domestic Relations Commissioner in March 1985, who recommended that the motion be granted. Plaintiff rejected the recommendation and the motion was argued in Third District Court in April. The order enforcing the agreement was filed on May 1, 1985, and plaintiff timely filed her notice of appeal. The issue is whether or not the trial court should have accepted and enforced the proceedings of June 5, 1984, as a stipulation between the parties.

It is necessary to begin by looking at what constitutes a "stipulation".

A promise or agreement with reference to a pending judicial proceeding, made by a party to the proceeding or his attorney, is binding without consideration. By statute or rule of court such an agreement is generally binding only (a) if it is in writing and signed by the party or attorney, or (b) if it is made or admitted in the presence of the court, or (c) to the extent that justice requires enforcement in view of material change of position in reliance on the promise or agreement.

Restatement (Second) of Contracts § 94 (1981).

Further,

It has been said that unless it is clear from the record that the parties assented, there is no stipulation, and it is provided in many jurisdictions, by rule of court or by statute, that a private agreement or consent between the parties or their attorneys, in respect to the proceed-

ings in a cause, will not be enforced by the court unless it is evidenced by a writing subscribed by the party against whom it is alleged or made, and filed by the clerk or entered upon the minutes of the court. Any other rule would require the court to pass upon the credibility of the attorneys.

73 Am.Jur.2d *Stipulations* § 2 (1974) (footnote omitted).

Utah R.Prac.D. & C.Ct. 4.5(b) requires that "[n]o orders, judgments or decrees upon stipulation shall be signed or entered unless such stipulation is in writing, signed by the attorneys of record for the respective parties and filed with the clerk, provided that the stipulation may be made orally in open court." There can be little doubt the rule of practice is concerned with the requirements of the Statute of Frauds as expressed in Utah Code Ann. § 25–5–4 (1984)[1] which states that certain agreements are void unless in writing and subscribed by the party to be charged therewith. The Statute of Frauds was not interposed as an affirmative defense below.[2]

Basic to a valid stipulation is a meeting of the minds of those involved. The parties must have completed their negotiations either in person or through their attorneys acting within the rules of agency. The agreement then is reduced to writing, signed and filed with the clerk or read into the record before the court. This procedure would indicate obvious assent to the provisions of the agreement so stipulated. Not so here.

This agreement was reached between one of the parties and both counsel. Mrs. Brown remained silent while it was discussed and read into the record. The proceeding was not done in court as would be permitted by Rule 4.5(b) but was done at the time of a deposition before a shorthand reporter. Had it been done in court a judge would have been involved and would have made inquiry of the parties, likely while they were both under oath, if they understood and agreed with the terms. Had Mrs. Brown remained silent in that scenario it is hard to imagine the court finding agreement. The same conclusion is compelled here. Silence cannot be construed to be assent in these circumstances. For a stipulation to be binding, agreement by the parties must be evidenced by a signed writing which would satisfy the Statute of Frauds, or the agreement must be stated in court on the record before a judge. The facts in this case do not show such evidence. Therefore, there was no stipulation reached between the parties and there is nothing for the court to enforce.

Defendant argues that plaintiff made no timely objection to the agreement and accepted the additional $200.00 per month from him; thus she should be estopped from denying its validity. It is easily understood why plaintiff accepted the increased payments. She was confused as to her position, unsure of what her counsel might do next, and the payments appear to have been her sole means of support. Any refusal to accept might have resulted in a delay or cessation of support or increased delays in determining the status of defendant's obligations. We have already discussed the time delays plaintiff experienced in obtaining an appointment with her counsel after she first read the written agreement. These facts are insufficient to impute a timeliness issue in accordance with *Klein v. Klein*, 544 P.2d 472, 476 (Utah 1975). Neither do these facts give rise to estoppel. We will not go around the Statute of Frauds and Rule 4.5(b) to create a stipulation on the mere acceptance of

---

**1.** § 25–5–4: *Certain agreements void unless written and subscribed.* In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, is in writing subscribed by the party to be charged therewith:

(1) Every agreement that by its terms is not to be performed within one year from the making thereof.

**2.** Certainly a stipulation setting terms for payment of alimony and child support would fall within the Statute of Frauds since such an agreement would not be performed within one year from the making. The putative stipulation here would run for many years with changes to occur at stated intervals.

$200.00 per month by plaintiff.[3] Whether she is entitled to retain the extra payments or will be required to credit defendant shall be determined by the trial court on remand.

In summary, we hold that the putative stipulation of June 5, 1984, fails to meet the requirements of a valid stipulation as stated above. The order enforcing the agreement is reversed and the case is remanded to the trial court for further action on plaintiff's original petition for modification. Costs against defendant.

GREENWOOD, J., concurs.

ORME, Judge: (dissenting)

I think what is said in the main opinion about the requirements for a binding stipulation is correct. I agree the requirements for a valid stipulation were not met in this case. However, there are situations where a settlement agreement is reached—where all parties have had a meeting of the minds as to the basis for settlement of an action or proceeding—through a device other than a stipulation. That agreement might be memorialized by an exchange of letters, dictation to a shorthand reporter, or even just a handshake. In my view, such agreements, intended to be binding when made, are enforceable and should be enforced. They should be enforced even though one party might have a change of heart or otherwise balk at signing a formal stipulation designed to implement the valid and binding agreement previously made. Parties have no right to welch on a settlement deal during the sometimes substantial period between when the deal is struck and when all necessary signatures can be garnered on a stipulation.

The key in this case, then, is whether appellant assented to the settlement agreement which was dictated to the reporter in her presence. She concededly sat mute throughout the proceeding. Her duly employed attorney, however, manifested assent on her behalf. The pivotal issue is whether he had authority to do so.

The facts are in conflict on this point. Appellant suggests she was stupefied by her former attorney's betrayal and rendered unable to speak or, apparently, even to storm out. On the other hand, it is reasonable to infer, as those present did, that a principal who says nothing when her agent speaks for her is in accord with the sentiments expressed by the agent. This inference is bolstered by evidence which is usually quite reliable—the subsequent course of conduct of the parties. Following the apparent agreement, respondent made payment at the higher level contemplated by the putative settlement and for several months appellant accepted those payments without incident. No unfavorable inference would be available from her merely cashing the checks, which were mostly for amounts clearly due her. But her retention and use of the extra amount not due her under the original decree is consistent only with an understanding that a settlement had been reached—or, I suppose, of dishonesty on her part. Laypersons fully understand that they may spend money only if it is theirs. There being nothing to suggest appellant was dishonest, the fact that she kept the extra amount rather than returning it tends to show she thought it was hers to keep; it could be hers to keep only if the decree were modified, as per the settlement, to increase the monthly total due for her support and that of the children. Thus, her retention and use of the larger payments tendered subsequent to the alleged settlement tends to show she had agreed to the terms of the settlement.

The facts concerning whether appellant assented to the settlement would support a conclusion either way. After hearing the motion to enforce the settlement, which a commissioner earlier heard and recommended be granted, the trial court made findings of fact to the effect that appellant was bound by the settlement. I concede, however, that those findings are not entitled to the usual deference because the court did not receive actual testimony. *Cf.*

---

**3.** The evidence shows this defendant to be earning a substantial income. The additional $200.00 per month paid on this putative stipula-tion represents no hardship and no material change of circumstances on his part.

*Diversified Equities, Inc. v. American Savings & Loan,* 739 P.2d 1133, 1136 (Utah Ct.App.1987).[1] The court received affidavits and counsels' representations about what the testimony would show. Thus, the trial court's usual advantage in terms of viewing the witnesses and their demeanor does not obtain in this case. We are in as good a position to review the affidavits and consider the proffer [2] as was the trial court.[3] After considering these items, I agree with the commissioner and the trial judge that the facts more readily support the conclusion that appellant initially agreed to the settlement and then had a change of heart than the conclusion that she never agreed but was rendered unable to say so and simply regarded the extra amounts tendered as a coincidental gift from her ex-husband.

I would affirm.

---

**1.** In *Diversified Equities,* the trial court received an extensive recitation of facts to which the parties had stipulated. 739 P.2d at 1134. The trial court then entered "findings" of fact. We observed: "Generally, a trial court's findings of fact are accorded great deference. However, without regard to the labels used, when those "findings" proceed from stipulated facts ... the "findings" are tantamount to conclusions of law, with the stipulation of facts being the functional equivalent of the findings of fact." 739 P.2d at 1136. That conclusion is premised on two factors: First, a disposition based on stipulated facts is "not one involving resolution by the trial court of conflicting testimony." *Schroeder v. Horack,* 592 S.W.2d 742, 744 (Mo.1979) (en banc). Second, since the facts are written or recited and do not turn on witness credibility, an appellate court has "the same means as the trial court had of reaching a correct conclusion of law...." *Stiles v. Brown,* 380 So.2d 792, 794 (Ala.1980). Those same factors apply to the affidavits and proffer which substituted for testimony in the instant case. Although the conflict between the affidavits should have prompted an evidentiary hearing, *see* Note 3, *infra,* we are in as good a position as was the trial court to read the affidavits and the proffer and draw logical conclusions therefrom.

**2.** Fortunately, one of the two attorneys requested that the hearing be reported or the proffer would be unavailable to us. Such a hearing should be reported as a matter of course. *See Briggs v. Holcomb,* 740 P.2d 281, 283 (Utah Ct. App.1987) ("Although consistently making a record of all proceedings imposes a greater burden on the trial court and court reporters, it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made.").

**3.** In retrospect, an evidentiary hearing would probably have been preferable. Had the testimony been consistent with the affidavits and proffer and the same findings made, those findings would clearly be entitled to the usual deference and the trial court's disposition would clearly be entitled to affirmance. However, neither side requested an evidentiary hearing and appellant does not argue on appeal that she was entitled to one.