**Bruce GOODMANSEN and Wilma Goodmansen, Plaintiffs and Appellees,**

v.

**LIBERTY VENDING SYSTEMS, INC.; Howard Abrams; Cascade Industries, Inc.; and Douglass Goff, Defendants and Appellants.**

No. 920156–CA.

Court of Appeals of Utah.

Dec. 7, 1993.

William B. Parsons, III, Salt Lake City, for defendants and appellants.

Bruce Goodmansen, pro se.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

## OPINION

BILLINGS, Presiding Judge:

Defendants/appellants Liberty Vending Systems, Inc. and Howard Abrams appeal

the trial court's order enforcing a settlement agreement with plaintiffs/appellees Bruce and Wilma Goodmansen. We affirm.

## FACTS

In October of 1989, Bruce Goodmansen and his mother Wilma Goodmansen entered into an agreement with Liberty Vending Systems, Inc. to purchase vending machines. In June of 1990, the Goodmansens brought suit against Liberty Vending and Howard Abrams, its president, alleging breach of implied and express warranties, fraud, and misrepresentation. The Goodmansens claimed that nine months after the agreement, most of the machines had not been delivered, and of those machines received, many were nonconforming and defective. A jury trial was set for March 26, 1991.

Between March 7 and March 22, 1991, the parties engaged in settlement negotiations. These negotiations are evidenced by a series of letters between Barry Lawrence, counsel for the Goodmansens, and Dean Becker, counsel for Liberty Vending and Abrams. A pretrial conference was held on March 18, 1991.[1]

By March 21, 1991, the settlement negotiations seemed in jeopardy. That day Lawrence had a letter hand delivered to Becker which stated: "As we have been unable to agree to a settlement in this case ... [w]e fully intend to be ready, willing and able to go ahead with the trial in this matter this Tuesday." That same day Lawrence also sent a letter to Judge Sawaya indicating they were preparing for trial on Tuesday, March 26, 1991.

However, three subsequent letters between Lawrence and Becker, all dated March 22, 1991, corroborate the Goodmansens' contention that the parties reached a settlement agreement. The first letter bearing that date was from Lawrence to Becker. It set forth the general terms of their agreement

and was signed by both Lawrence and Becker. The letter stated:

This letter is to reflect the settlement that we seemed to have reached in the above-referenced case. It is my understanding that we have agreed to the following general terms:

1. Howard Abrams will sign a $55,000 Promissory Note both as the President of Liberty Vending and in his individual capacity made payable to my client, Bruce Goodmansen. That Note is to be paid starting with a $1,000 payment on April 1, 1991, a $1,500 payment on May 1, 1991, a $2,5000 [sic] payment on July 1, 1991, and $3,000 payments on the first day of each month for the sixteen (16) months thereafter followed by a final payment of $2,000 due on November 1, 1992.

2. As we agreed, if your client defaults in making any monthly payment, the entire amount remaining on that $55,000 Note becomes due at once againt [sic] Howard and Libery [sic] Vending.

3. If your client makes timely payments for each of the next nineteen (19) months as agreed above, we will then execute a Satisfaction of Judgement of the $81,000 judgment against Doug Goff and Cascade Industries. If your clients default on their $55,000 Note, we will be able to execute on that judgment at once.

Based upon our telephone conversations over the past few days, this is my understanding of the agreement we have reached in this case. If I have in any way misunderstood the agreement that we reached, contact me at once. I have left a place below for you to approve these general settlement terms. Once I have received your written consent as to this settlement, I will contact the court and let them know that we have agreed to a settlement in this case and that the Tuesday trial date will not be necessary. *If I do*

---

1. The record contains no information concerning the pretrial conference, other than it was ordered to be held on March 18, 1991. Appellants claim that Lawrence, Bruce Goodmansen, and Becker were present at the conference, and that Abrams did not attend. They claim that Becker called Abrams before the close of the conference and presented the settlement offer to him, and that Abrams indicated he agreed in substance with the settlement. However, without support in the record, we do not rely on this assertion.

*not hear back from you, in writing, by 4:00 p.m. today, I will assume that these general terms are as we have agreed, and that we have thus effectuated a settlement on these general terms.* Once again, if I have in any way misstated our settlement, contact me at once.

Becker replied to Lawrence with a letter hand delivered that same day, March 22, 1991, in which Becker stated:

> Your settlement letter of March 22, 1991 is acceptable with the following exceptions:
>
> 1. The April 1, 1991 payment is changed to April 20, 1991.
>
> 2. The provisions of paragraph 2 are modified to reflect that the payment is late after the 1st of the month and in default after the 10th, but that no judgment may be rendered without notice and hearing.
>
> With the above changes, the settlement is acceptable.

In response, Lawrence had a second letter hand delivered to Becker, dated March 22, 1991. In this letter Lawrence stated:

> After speaking with my client, we basically agree to those terms, as follows:
>
> 1. That in the event that payment is late (i.e., after the first of the month), a 5% interest charge will be placed on that payment. Default occurs if your client fails to pay within ten (10) days after payment is due.
>
> 2. We will agree that no judgment will be entered without notice to either Howard Abrams, Liberty Vending, or yourself. We cannot agree that a hearing will take place, particularly because the local rules do not provide for hearings in many circumstances.
>
> 3. We are willing to take the first payment (of $1,000) on April 20, 1991, in the form of a Cashier's Check. Thus, the Promissory Note will be for $54,000, the first payment being due thereunder on May 1, 1991 and continuing, as we previously agreed, through November 1, 1992.
>
> I believe that these terms are agreeable with you and your client from our telephone conversations this morning. Please approve these terms where provided for below and I

will tell the court that the scheduled trial date will not be necessary.

Becker signed this letter on the signature line Lawrence provided for Becker's approval. Lawrence thereafter cancelled the scheduled trial date.

Lawrence drafted a promissory note and a general release and settlement agreement pursuant to the terms agreed upon in the March 22, 1991 correspondence. Lawrence had those documents hand delivered to Becker, with a cover letter, on March 25, 1991. This letter stated:

> Pursuant to the agreement we reached last week, enclosed is a General Release and Settlement Agreement, and a Promissory Note for your review and your clients' execution in this matter. I believe that I have incorporated all of the terms we agreed per last week, however, if you have *any* questions or concerns regarding this settlement, please contact me at once. If I have not heard back from you by the end of this week, I will assume that you are trying to get your clients to sign the documents. I will be out of town the latter part of this week, so if I do not hear from you I will give you a call early next week. In any event, it is my hope to have this wrapped up by April 20, 1991 so that we are in accordance with the payment procedures we have agreed upon.
>
> Thanks for your cooperation in this matter and give me a call if you have any questions concerning these documents.

However, Becker neither contacted Lawrence nor signed and returned the documents. On April 11, 1991, Lawrence had a letter hand delivered to Becker to ensure that appellants would comply with the settlement before April 20, 1991.

> It has been over two weeks since I forwarded our proposed Settlement and Release Agreement, and Promissory Note to you for your approval and for your clients' signatures. I have made numerous telephone calls to you over the last two weeks, but have not heard back from you. I am assuming that the forms of our proposals are acceptable and that you are now obtaining the appropriate signatures. In any event, under the settlement agreement

we reached, we are expecting a $1,000 Cashier's Check from your clients on or before April 20, 1991. Please contact me at once if you have any questions or concerns over this matter.

By April 19, 1991, Lawrence had not heard from Becker or appellants regarding the settlement. Lawrence had another letter hand delivered to Becker that same day, which stated that he expected to receive a signed promissory note and settlement agreement, along with a $1000 check, by April 20, 1991. In that letter, Lawrence stated that "[i]f I have not received the documents and check by Monday, April 22, 1991, I will make a motion to the court to compel our settlement agreement and will seek the appropriate fees and costs."

Lawrence never received a check for $1000 or a signed promissory note and settlement agreement. According to Lawrence, he did not learn of appellants' intent not to abide by the settlement agreement until a telephone conversation with Becker on April 22, 1991. On April 22, 1991, Becker withdrew as counsel for appellants and was replaced by Edwin F. Guyon.

Lawrence requested the court to enforce the settlement agreement, and a hearing was held on May 20, 1991. The court granted the motion to enforce the settlement agreement and entered judgment "on the terms and conditions of the Settlement Agreement reached on March 22, 1991 between the parties."[2] The court also awarded fees and costs incurred in enforcing the agreement. It is from this order and judgment appellants appeal. They argue that (1) a settlement agreement was not reached between the parties, and even if it was (2) the Code of Judicial Administration precludes enforcement of this agreement.

## STANDARD OF REVIEW

■ " 'The decision of a trial court to summarily enforce a settlement agreement will not be reversed on appeal unless it is

shown that there was an abuse of discretion.' " *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.,* 781 P.2d 478, 479 (Utah App.1989) (quoting *Mascaro v. Davis,* 741 P.2d 938, 942 n. 11 (Utah 1987)).

## I. BINDING SETTLEMENT AGREEMENT

Appellants first argue that under controlling authority a legally binding settlement agreement was not reached between the parties. Specifically, appellants claim they cannot be bound because they did not sign a written settlement agreement. We note that appellants do not contend Becker exceeded the scope of his authority in assenting to the terms of settlement, but rather concede they are bound by his acts under the doctrine of apparent authority. *See Luddington v. Bodenvest Ltd.,* 855 P.2d 204, 208–09 (Utah 1993); *Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090, 1094 (Utah 1988).

■ The trial court has the power to enter a judgment enforcing a settlement agreement if it is an enforceable contract.

It is a basic rule that the law favors the settlement of disputes. Such agreements under the proper circumstances may be summarily enforced. However, whether a court should enforce such an agreement does not turn merely on the character of the agreement. An agreement of compromise and settlement constitutes an executory accord. Since an executory accord "constitutes a valid enforceable contract," basic contract principles affect the determination of when a settlement agreement should be so enforced.

*Mascaro v. Davis,* 741 P.2d 938, 942 (Utah 1987) (footnotes omitted) (quoting *Lawrence Constr. Co. v. Holmquist,* 642 P.2d 382, 384 (Utah 1982)).

■ It is of no legal consequence that the parties have not signed a settlement agreement. *Mascaro,* 741 P.2d at 941 n. 2; *accord Murray v. State,* 737 P.2d 1000, 1001 (Utah

---

**2.** Settlement agreements may be summarily enforced without an evidentiary hearing. *Tracy–Collins Bank & Trust Co. v. Travelstead,* 592 P.2d 605, 609 (Utah 1979) (affirming trial court's order to enforce settlement agreement without an

evidentiary hearing); *accord Robinson v. Department of Natural Resources,* 620 P.2d 519, 520 (Utah 1980) (noting settlement agreements are enforceable without evidentiary hearing).

1987). Likewise, "[i]f a written agreement is intended to memorialize an oral contract, a subsequent failure to execute the written document does not nullify the oral contract." *Lawrence*, 642 P.2d at 384. "It is a basic and long-established principle of contract law that agreements are enforceable even though there is neither a written memoralization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds." *Murray*, 737 P.2d at 1001. "Parties have no right to welch on a settlement deal during the sometimes substantial period between when the deal is struck and when all necessary signatures can be garnered on a stipulation." *Brown v. Brown*, 744 P.2d 333, 336 (Utah App.1987) (Orme, J., dissenting).

█ The three letters between Lawrence and Becker dated March 22, 1991 constitute a binding settlement agreement between the parties. The first letter from Lawrence to Becker stated, "This letter is to reflect the settlement that we seemed to have reached." Lawrence then set forth the general terms of the agreement, which delineated amounts owed and a clear payment schedule. Becker signed this letter, approving the general settlement terms. In this letter, Lawrence asked twice for Becker to contact him if he had in any way misunderstood the agreement they had reached. Lawrence stated, "If I do not hear back from you, in writing, by 4:00 p.m. today, I will assume that these general terms are as we have agreed, and that we have thus effectuated a settlement on these general terms." (Emphasis omitted). Lawrence also said he would contact the court to cancel the trial "[o]nce I have received your [Becker's] written consent as to this settlement."

Becker clearly accepted the settlement in his reply letter to Lawrence on March 22, 1991. Becker stated, "Your settlement letter of March 22, 1991 is acceptable with the following exceptions." The changes he specified did not affect the substance of the agreement; he merely changed the first payment date from April 1, 1991 until April 20, 1991, and defined a late payment. Becker concluded, "With the above changes, the settlement is acceptable."

Lawrence indicated his belief that a settlement agreement had been reached in his second letter dated March 22, 1991, in which he stated, "After speaking with my client, we basically agree to those terms...." Lawrence then set forth four changes which did not alter the substance of the agreement. He stated the interest charge, defined default, agreed to notice before entry of judgment, and required the first payment to be a cashier's check. Neither the amount nor terms of the agreement were changed. Lawrence further stated, "I believe that these terms are agreeable with you and your client from our telephone conversations this morning. Please approve these terms where provided for below and I will tell the court that the scheduled trial date will not be necessary." Becker signed this letter on the signature line Lawrence provided for Becker's approval.

Moreover, the conduct of the parties indicates that both parties believed a settlement agreement had been reached. Lawrence stated repeatedly that he would cancel the trial date once a settlement of the case had been reached. After Becker signed the settlement letters, Lawrence cancelled the trial set for March 26, 1991, an act consistent with a settlement having been reached. Thus, the conduct of the parties supports the conclusion that the correspondence between Lawrence and Becker, dated March 22, 1991, constitutes a binding settlement agreement.

## II. RULE 4–504(8)

█ Appellants next argue that Rule 4–504(8) of the Code of Judicial Administration precludes enforcement of this agreement. This Rule provides: "No orders, judgments, or decrees based upon stipulation shall be signed or entered unless the stipulation is in writing, signed by the attorneys of record for the respective parties and filed with the clerk or the stipulation was made on the record."

However, Rule 4–504 was amended, effective April 15, 1991, to include two new provisions relevant to the resolution of this issue. The following was added to the Intent paragraph: "This rule is not intended to change existing law with respect to the enforceability

**586**

of unwritten agreements." Subsection (10) was also added, which provides that "[n]othing in this rule shall be construed to limit the power of any court, upon a proper showing, to enforce a settlement agreement or any other agreement which has not been reduced to writing." Utah Code Jud.Admin. R4–504(10).

These amendments clarify the disagreement among panels of this court interpreting the impact of Rule 4–504 on the common law power of the court to enforce an otherwise legally enforceable settlement agreement.[3] The addition of subsection (10) indicates that Rule 4–504 was never intended to preempt the power of the court to enforce settlement agreements that meet common law requirements. Thus, Rule 4–504 does not preclude enforcement of the settlement agreement at issue.

## CONCLUSION

The correspondence between Lawrence and Becker dated March 22, 1991 constitutes a binding settlement agreement. The conduct of both parties supports this conclusion. The trial court has the power to enforce this agreement pursuant to basic contract principles, and Rule 4–504 of the Code of Judicial Administration does not preclude its enforcement. Accordingly, we affirm.

DAVIS and GREENWOOD, JJ., concur.

---

**3.** Prior to the 1991 amendments, there was conflict within this court concerning whether all settlement agreements were "stipulations" covered by Rule 4–504(8), and whether a settlement agreement must be in writing to be enforceable, thus meeting the procedural requirements of Rule 4–504(8). *Compare Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 480 n. 1 (Utah App.1989) (plurality decision) (affirming order to compel settlement and hold-ing that settlement agreements need not be in writing to be enforceable) *with Brown v. Brown*, 744 P.2d 333, 335 (Utah App.1987) (finding stipulations must be in writing or submitted in open court to be enforceable, relying in part on predecessor to Rule 4–504(8)) *and Bagshaw v. Bagshaw*, 788 P.2d 1057, 1059 n. 1 (Utah App.1990) (recognizing disagreement that settlement agreements must meet procedural requirements of Rule 4–504(8) to be enforceable).