592 P.2d 605 (1979)
TRACY-COLLINS BANK AND TRUST COMPANY, a Utah Banking Corporation, Plaintiff,
v.
G. Ware TRAVELSTEAD, Richard D. Bass, W. Arceneaux, Audrey H. Arceneaux, Edythe T. Travelstead, Melco, Inc., a Nevada corporation, dba Mel-Co, Zions First National Bank, Richard D. Bass Trust Estate, Claron C. Spencer, Snowbird, Ltd., a Utah Limited Partnership, and Visvivas, Inc., a Delaware Corporation, Defendants and Appellants.
G. Ware TRAVELSTEAD and W. Arceneaux, Cross-Claimants and Appellants,
v.
Richard D. BASS, and Snowbird, Ltd., a Utah Limited Partnership, and Richard D. Bass Trust Estate, Cross-Defendants and Respondent.
G. Ware TRAVELSTEAD and W. Arceneaux, Defendants, Third-Party Plaintiffs and Appellants,
v.
SNOWBIRD CORPORATION, a Utah Corporation, Harry M. Whittington, Jon Mosle, Jr., Richard D. Bass, Trustees of Richard D. Bass Trust Estate and Individually, and John Does I through X, Third-Party Defendants.
No. 15741.
Supreme Court of Utah.
March 9, 1979.
*606 Janet H. Smith, of Ray, Quinney & Nebeker, Gordon Roberts, of Parsons, Behle & Latimer, Merlin R. Lybbert and Reed L. Martineau, of Snow, Christensen & Martineau, Salt Lake City, for defendants and appellants.
Raymond J. Etcheverry, of Berman & Giaque, Salt Lake City, for plaintiff.
MAUGHAN, Justice:
This appeal involves the enforcement by the district court of a settlement agreement resolving several lawsuits, all of which involved certain real property at Snowbird Ski Resort. The court granted the motion of respondent Richard D. Bass (hereafter Bass) to enforce the settlement agreement against appellants G. Ware Travelstead (hereafter Travelstead) and W. Arceneaux (hereafter Arceneaux), and also denied the petition of Travelstead and Arceneaux for a stay of its order pending an evidentiary hearing. We affirm. Costs to Bass.
In 1974 Travelstead executed, in favor of Tracy-Collins Bank & Trust (hereafter Tracy-Collins), a promissory note in the amount of $280,000, which was secured by a trust deed on certain real property designated as the House at Snowbird (hereafter, the House). Also that year Arceneaux and Bass each purchased a one-fourth interest in the House, and in 1975 all three owners jointly renewed the note in the amount of $314,738.34. When the note became due in 1976, Travelstead, Arceneaux and Bass defaulted. Tracy-Collins thereafter instituted foreclosure proceedings in the Third Judicial District for Salt Lake County. This action precipitated various counterclaims and cross-claims among the parties, along with several other lawsuits involving, among others, Snowbird Corporation and the First National Bank of Maryland (hereafter FNBM). In connection with these proceedings, the parties filed various liens and encumbrances against the House.
In late 1977 the parties negotiated a settlement agreement, the main purpose of which was to eliminate the clouds upon the House in order to facilitate the disposition of it and the repayment of various debts. In addition to the above, the settlement agreement was to (1) discharge the liquidated debts of Travelstead, Arceneaux and Bass owed Tracy-Collins; (2) discharge the liquidated debt of Travelstead owed FNBM, and (3) terminate actions commenced by FNBM and Snowbird Corporation against Arceneaux.
The agreement would effectuate a release of the various claims only if the House were disposed of for a cash amount sufficient to discharge the obligations to Tracy-Collins and FNBM prior to a specified deadline. If the disposition for cash was not made before the deadline, the agreement operated only to expedite Tracy-Collins' foreclosure action. Thus the agreement provided that Travelstead and Arceneaux would have until January 31, 1978, to dispose of the House for the minimum cash sales price. If they did not make the disposition, Bass would then have until February 10, 1978, to consummate a sale.
The parties agreed to deposit all documents necessary to convey clear title with counsel for Tracy-Collins. These documents included "good and sufficient warranty deed[s]" executed by Travelstead, Arceneaux and Bass, deeds of reconveyance executed by Tracy-Collins and other entities, and releases of lis pendens and other liens by Snowbird Corporation and FNBM.
On approximately January 23, 1978, counsel for Travelstead and Arceneaux orally informed counsel for the respective parties that Travelstead and Arceneaux intended to purchase the House, and that the closing would occur on January 31, 1978. As of January 23, no documents had been deposited *607 with counsel for Tracy-Collins, but counsel for Bass gave assurance that the documents respecting Bass' interest would be deposited in time for the closing. On January 27, Bass' counsel informed counsel for Travelstead and Arceneaux the documents would be deposited January 30, and Bass would be in Salt Lake City and personally available for the closing on January 31.
Except for warranty deeds conveying the interests of Travelstead and Arceneaux, all documents necessary to convey clear title to the House had been deposited by the afternoon of January 30, 1978. On that day, counsel for Travelstead and Arceneaux advised the other parties that they would need to examine the documents prior to the closing; all parties immediately responded by delivering the documents, or copies thereof, to counsel for Travelstead and Arceneaux. On approximately this same date, it became apparent the financial institution which was to provide financing for Travelstead and Arceneaux would also need to review the documents, which would necessitate a delay of several days in the closing.
After January 31 passed without the occurrence of the closing, Bass filed a notice to enforce the settlement agreement, which was heard and granted on February 9, 1978. The order required Travelstead and Arceneaux to deposit their warranty deeds as contemplated by the agreement. On February 14, Travelstead and Arceneaux deposited the warranty deeds, and petitioned the court for a stay of its previous order pending an evidentiary hearing. After reviewing the settlement agreement and affidavits by both counsel for Bass and for Travelstead and Arceneaux detailing the facts attendant to the negotiation, execution and performance of the agreement, the court heard arguments, and denied the petition.
Travelstead and Arceneaux admit on appeal they failed to comply with the terms of the agreement, and do not dispute its validity. But, they assert, their failure to perform was caused by Bass' failure to make a timely deposit of the documents in his possession. At the least, they claim, the court should be required to hold an evidentiary hearing to properly determine substantial issues of fact which are unresolved.
Settlements are favored in the law, and should be encouraged, because of the obvious benefits accruing not only to the parties, but also to the judicial system. An expeditious means of enforcing a settlement agreement is conducive to this policy of law in that it adds the presence of judicial finality to the agreement, insuring that the goals of the parties as expressed in the agreement can be speedily attained. Particularly in this case, where the agreement established specific deadlines for performance because of the need to quickly dispose of the House and discharge rising debts, summary enforcement of the settlement agreement pursuant to a motion was proper.
It is quite well established that a settlement agreement may be summarily enforced by motion in the court of the original action.[1] In Melnick v. Binenstock, 318 Pa. 533, 179 A. 77, 78 (1935), the court declared:
A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus.
We believe the above statement is applicable to the case at hand, and hold the district court properly enforced the settlement agreement pursuant to Bass' motion.
Travelstead and Arceneaux argue the cases cited at footnote 1 are inappropriate *608 as authority because they involve settlement agreements negotiated in court, or which were approved by the court before enforcement was requested. Here, they point out, the parties negotiated the settlement privately, and the court had no opportunity to review the agreement prior to its consideration of Bass' motion to enforce.
We note this distinction, but consider it immaterial in this case. The critical issue is whether the court had before it sufficient facts to properly order specific enforcement according to the terms of the agreement. In this respect, the court had before it the agreement itself, and heard oral argument by counsel for both Bass and Travelstead and Arceneaux at Bass' motion to enforce the agreement. Before ruling on the petition of Travelstead and Arceneaux to stay the order, the court again heard oral argument and also had before it affidavits from counsel for Bass and counsel for Travelstead and Arceneaux, setting forth in detail the sequence of events leading to the failure of Travelstead and Arceneaux to dispose of the House by January 31.
We believe the court was sufficiently apprised of the relevant facts surrounding the transactions that it would make a rational and supportable decision. A separate proceeding or evidentiary hearing is not required simply because the court had not, prior to its consideration of Bass' motion to enforce, given its stamp of approval to the agreement as negotiated. The court obviously reviewed and approved the agreement in its deliberations regarding the motions of Bass and of Travelstead and Arceneaux. Indeed, Travelstead and Arceneaux have made no claim the agreement is not valid and enforceable. They assert, however, that Bass did not deposit the documents respecting his interest in the House in a timely manner, and thus he delayed the required approval by the lending institution of a loan to Travelstead and Arceneaux enabling them to close the sale by January 31. They refer us to Fischer v. Johnson, Utah, 525 P.2d 45, 46 (1974), in which we stated:
But it is also true that specific performance is a remedy of equity; and one who involves it must have clean hands in having done equity himself. That is, he must take care to discharge his own duties under the contract ...
We agree with the district court, however, that Bass did comply with the express terms of the settlement agreement directing all parties to deposit their respective documents with counsel for Tracy-Collins. Bass' counsel reassured counsel for Arceneaux and Travelstead on several occasions that the needed documents would be deposited in time for the anticipated closing, and the documents actually were deposited on January 30. From the affidavits of the attorneys, it is clear Bass was not informed until January 30 that the documents would also have to be reviewed by both counsel for Travelstead and Arceneaux and the lending institution which intended to finance the purchase of the House. Significantly, the settlement agreement makes no mention of any such review by counsel or other institution, but simply calls for all documents, including a "good and sufficient warranty deed" from Bass, to be deposited with counsel for Tracy-Collins.
Thus, the district court was justified in its determination that Bass complied with the terms of the agreement, and we believe it was also correct in determining Travelstead and Arceneaux were not excused in their failure to comply. It is undisputed Travelstead and Arceneaux did not deposit warranty deeds to the House with counsel for Tracy-Collins until ordered to by the court on February 9. And substantial evidence exists to support the court's conclusion that Bass, in complying with the terms of settlement agreement, did not cause the failure of Travelstead and Arceneaux to perform.
Travelstead and Arceneaux have failed to convince the district court or us of any substantial factual issues which were overlooked in the proceedings before the district court; the expeditious enforcement pursuant to motion was thus proper and justified. In Autera v. Robinson, 136 U.S.App.D.C. 216, 419 F.2d 1197, 1200 (1969), the court observed:

*609 It is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it. Quite obviously, so simple and speedy a remedy serves well the policy favoring compromise, which in turn has made a major contribution to its popularity.
Yet it is apparent that the summary procedure for enforcement of unperformed settlement contracts is not a panacea for the myriad types of problems that may arise. The summary procedure is admirably suited to situations where, for example, a binding settlement bargain is conceded or shown, and the excuse for nonperformance is comparatively unsubstantial. On the other hand, it is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve. [Citations omitted.]
The case at hand is not one in which complex factual issues are presented; here, a "binding settlement bargain is conceded or shown, and the excuse for nonperformance is comparatively unsubstantial."
CROCKETT, C.J., and WILKINS, HALL and STEWART, JJ., concur.
NOTES
[1] McKenzie v. Boorhem, 117 F. Supp. 433 (W.D. Ark. 1954); Wenneker v. Frager, Mo. App., 448 S.W.2d 932 (1969); Beirne v. Fitch Sanitarium, 167 F. Supp. 652 (S.D.N.Y. 1958); Meetings and Expositions, Inc. v. Tandy Corp., 490 F.2d 714 (2nd Cir.1974); All States Investors, Inc. v. Bankers Bond Co., Inc., 343 F.2d 618 (6th Cir.1965); Cummins Diesel Michigan, Inc. v. The Falcon, et al., 305 F.2d 721 (7th Cir.1962).