**JOHN DEERE COMPANY,**
**Plaintiff and Appellee,**

v.

**A & H EQUIPMENT, INC.; Wendell Hansen; Mark B. Anderson; and Vada A. Anderson, Defendants and Appellants.**

No. 920774–CA.

Court of Appeals of Utah.

June 9, 1994.

D. David Lambert (Argued), Linda J. Barclay, Howard, Lewis & Petersen, Provo, for appellants.

R. Brent Stephens (Argued), Ryan E. Tibbitts, Snow, Christensen & Martineau, Salt Lake City, for appellee.

## OPINION

Before BENCH, BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

This dispute involves the judicial enforcement of a settlement agreement. John Deere Company (Deere) asserts that the parties mutually agreed to settle this case and thus that the trial court properly ordered A & H Equipment, Inc. (A & H) to comply with that agreement. On the other hand, A & H argues that the parties were in the midst of negotiating the terms of the settlement agreement when Deere made, and the trial court granted, the motion to have the trial court judicially enforce Deere's proposed settlement agreement. We affirm.

## BACKGROUND

Deere initially brought this civil action against A & H [1] on June 20, 1989, to collect monies which A & H owed to Deere on an open account. A & H filed a cross-complaint against Deere alleging breach of the parties' franchise agreement and other tortious acts. The trial court entered judgment on September 21, 1992 in favor of Deere, after hearing oral argument on both Deere's and A & H's motions to enforce their respective interpretations of the settlement agreement. A & H appealed this order to the Utah Supreme Court on September 23, 1992, which subsequently poured the case over to this court for disposition.

Beginning in 1963, Deere established a franchisor-franchisee relationship with A & H. Deere granted to A & H an exclusive franchise territory covering six counties in

---

1. There were several other parties named in this suit but for ease of expression, this opinion refers to all defendants collectively as A & H. The three other named parties—Wendell Hansen, Mark B. Anderson, and Vada A. Anderson—were apparently either officers and/or directors of A & H or its principal shareholders.

Central Utah. The franchise arrangement also required A & H to enter into various agreements with Farm Plan, Inc. (Farm Plan), a sibling corporation to Deere in that they share a common parent corporation, but nonetheless a separate and autonomous corporation. Farm Plan is the financing arm of Deere, through which many of A & H's customers financed their purchases of farm machinery.

Prior to 1989, A & H, in the midst of serious financial setbacks, defaulted on some of the agreements with Deere and Farm Plan. Consequently, Farm Plan brought suit against A & H for breach of its agreements with Farm Plan.[2] On June 1, 1989, the trial court entered judgment for Farm Plan against A & H in the amount of $36,062.47 plus interest and costs.[3]

Nineteen days later, on June 20, 1989, Deere filed the present suit against A & H, alleging that A & H had defaulted on various obligations under the franchise agreement. A & H counterclaimed against Deere, alleging that it had breached the franchise agreement and had committed other tortious acts.

Almost two years later, A & H instructed its attorney, David Lambert, to try and settle the case. At this point, the parties' versions of the facts diverge. A & H claims that it intended for Lambert to obtain a release from Deere on all "John Deere-related matters," which it asserts included a release from the outstanding judgment held by Farm Plan.[4] Deere viewed the scope of the settlement agreement as a release of all claims by the single entity John Deere Company against A & H, but not a release of all claims by the John Deere family of corporations, which would have included Farm Plan.

Lambert initially wrote a letter to Deere's counsel, stating, "I have been asked by my client to propose a settlement with your client in the above referenced case.[5] The settlement proposal is a mutual dismissal with prejudice and a general release of claims with each party to bear their respective costs and fees." Deere's counsel accepted A & H's offer by telephone on April 15, 1991. A week later, on April 22, 1991, Deere's counsel sent a letter confirming the earlier telephonic acceptance, stating, "This will confirm my telephone conversation of April 15, 1991, in which I accepted your settlement proposal contained in your letter of April 10, 1991. I will prepare the settlement documents and forward them to you for execution." Deere's attorney thereafter prepared the settlement documents and sent them to Lambert, on May 8, 1991, to obtain A & H's signature.

Lambert forwarded the settlement agreement to A & H for signature by its corporate officers. After reviewing the agreement, A & H advised Lambert that it wanted to incorporate into the settlement agreement a release from the Farm Plan judgment as well. After a period of approximately two months, Deere's attorney wrote Lambert, on July 18, 1991, inquiring as to the delay in obtaining signatures on the settlement agreement. Lambert, responding by letter dated July 29, 1991, requested that Deere include language in the settlement agreement releasing A & H from the Farm Plan judgment. That letter stated, in relevant part:

My client is concerned about making sure that the Mutual Release of All Claims comprehensively releases him from any obligations to John Deere. Specifically, my

2. In this earlier suit, Farm Plan sued A & H and Wendell Hansen, but did not sue the Andersons.

3. Farm Plan agreed to postpone execution of the judgment based on a stipulation by A & H to pay off the judgment by way of regular, periodic payments. A & H apparently defaulted on this stipulation by failing to make any payments to Farm Plan and the judgment remains outstanding.

4. Lambert did not represent A & H in the earlier Farm Plan case although Deere retained the same counsel for both suits. Hence, Lambert

was initially unaware of the outstanding Farm Plan judgment. Lambert claims that he discovered its existence, and A & H's desire to obtain its release along with a release from the present suit, only after A & H objected to the formal settlement documents that Deere submitted to A & H for signature.

5. The phrase "above referenced case" refers to the following caption in the letter which appears immediately after the addressee's name and mailing address: "Re: John Deere v. A & H Equipment, et al."

client would like to add John Deere Farm Plan as a releasing party. Please let me know if that is acceptable so that we can get this matter finalized.

Thereafter, Deere's counsel phoned Lambert and related his client's refusal to include the requested language. Deere thereafter filed a motion in the trial court to enforce the settlement agreement originally proposed by A & H. A & H filed a cross-motion to have the court enforce A & H's proposed settlement agreement (i.e. a release of Deere's claims and the Farm Plan judgment) and requested oral argument. On August 28, 1992, the trial court heard oral argument on the pending motions. Subsequently, it issued a memorandum decision granting Deere's motion to enforce the settlement agreement, denying A & H's motion, and requiring A & H to execute the settlement documents prepared by Deere's counsel. A & H now appeals from the trial court's decision.

## ISSUES

A & H asserts that the trial court erred by enforcing the settlement agreement because (1) the parties failed to have a meeting of the minds on the specific terms of the settlement agreement, (2) it was not previously filed with, or entered upon the minutes of, the trial court, (3) even if it was enforceable, the agreement should be rescinded because A & H's attorney unilaterally erred when proposing the settlement to Deere, and (4) its terms were ambiguous.

## STANDARD OF REVIEW

Generally, a trial court's summary enforcement of a settlement agreement " 'will not be reversed on appeal unless it is shown that there was an abuse of discretion.' " *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 479 (Utah App.1989) (quoting *Mascaro v. Davis*, 741 P.2d 938, 942 n. 11 (Utah 1987)). In arriving at its decision to enforce the settlement agreement, the trial court concluded that Deere and A & H had a meeting of the minds and that the settlement agreement was unambiguous. As to these issues, whether a contract exists between parties is a question of law which we

review for correctness. *Herm Hughes & Sons, Inc. v. Quintek*, 834 P.2d 582, 583 (Utah App.1992). In addition, whether contractual language is ambiguous is a question of law, also reviewed for correctness. *Equitable Life & Casualty Ins. Co. v. Ross*, 849 P.2d 1187, 1192 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993).

## ANALYSIS

### Meeting of the Minds

A & H insists on appeal that Deere failed to propose, and A & H never agreed to, the specific terms of the settlement agreement. Consequently, argues A & H, there was no meeting of the minds, no enforceable agreement, and the trial court erred in summarily enforcing an otherwise unenforceable contract.

A & H correctly contends that a trial court has the power to enter a judgment enforcing a settlement agreement only if there is an enforceable contract.

"It is a basic rule that the law favors the settlement of disputes. Such agreements under the proper circumstances may be summarily enforced. However, whether a court should enforce such an agreement does not turn merely on the character of the agreement. An agreement of compromise and settlement constitutes an executory accord. Since an executory accord 'constitutes a valid enforceable contract,' *basic contract principles affect the determination of when a settlement agreement should be so enforced.*"

*Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584 (Utah App.1993) (quoting *Mascaro v. Davis*, 741 P.2d 938, 942 (Utah 1987) (emphasis added) (footnotes omitted) (quoting *Lawrence Constr. Co. v. Holmquist*, 642 P.2d 382, 384 (Utah 1982))); *accord Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 479 (Utah App. 1989) ("[V]oluntary settlement of legal disputes is favored by the law and, under certain circumstances, a settlement agreement may be summarily enforced as an executory accord."). Thus, this court has generally affirmed the "granting of a motion to compel

settlement if the record establishes a binding agreement and 'the excuse for nonperformance is comparatively unsubstantial.'" *Id.* (quoting *Tracy–Collins Bank & Trust Co. v. Travelstead,* 592 P.2d 605, 609 (Utah 1979)). We therefore review the record to determine whether A & H and Deere had a binding agreement and whether A & H's excuse for nonperformance was "comparatively unsubstantial."

Of the elements required to constitute a binding contract, A & H asserts that only one was missing—a meeting of the minds. A & H insists that Mr. Lambert's first letter to Deere's counsel was intended to obtain a release from all outstanding claims and judgments held not only by Deere but also by Farm Plan. To support this claim, A & H points to the phrase "and a general release of claims," found in Mr. Lambert's settlement proposal letter of April 10, 1991.[6] Consistent with this position, A & H maintains that Deere proposed a counter-offer when it submitted the settlement agreement document because that document covered claims held by Deere but not the outstanding Farm Plan judgment against A & H. Accordingly, A & H asserts that the parties were still negotiating the settlement agreement when Deere asked, and received, judicial enforcement of the proposed settlement agreement.

Contrary to A & H's portrayal of the circumstances, we believe that the trial court did not abuse its discretion by determining that the parties initially had a meeting of the minds and that A & H subsequently changed its mind.[7] In *Crismon v. Western Co. of North America,* 742 P.2d 1219 (Utah App. 1987), this court stated that

> "contractual mutual assent requires assent by all parties to the same thing in the same sense so that their minds meet as to all the terms." Determining whether the specific terms omitted were essential to the agreement requires an examination of the entire agreement and the circumstances under which the agreement was entered into.

*Id.* at 1221–22 (quoting *Cessna Fin. Corp. v. Meyer,* 575 P.2d 1048, 1050 (Utah 1978)). In *Crismon,* the issue was whether the parties had entered into a valid lease agreement. In arriving at a negative conclusion, this court looked to the correspondence that had passed between the parties. The language in those letters was preliminary, indicating that negotiations were still ongoing.[8]

In the present case, there are three relevant documents in the record that changed hands between the parties—two letters and

6. As Black's Law Dictionary clarifies, the term "claim" is arguably not expansive enough to include Farm Plan's outstanding judgment against A & H. It defines "claim" as, "A cause of action. Means by or through which claimant obtains possession or enjoyment of privilege or thing. Demand for money or property as of right...." *Black's Law Dictionary* 247 (6th ed. 1990). These definitions of a "claim" seemingly anticipate something which exists prior to the time that a court decides the issue. As confirmed by Black's definition of "judgment," a court's ruling transforms a claim into a judgment: "The official and authentic decision of a court of justice upon the respective rights and *claims* of the parties to an action or suit therein litigated and submitted to its determination." *Id.* at 841 (emphasis added).

In A & H's case, the phrase "general release of claims" thus likely refers to rights or causes of action that A & H possibly had against Deere which had not yet been decided by a court of law. The phrase, therefore, arguably does not include the Farm Plan judgment, which has already undergone the metamorphosis from a claim to a judgment.

7. A & H postures its argument as if Deere proposed, and A & H did not agree to, the specific terms of the settlement agreement. Our reading of the record indicates that A & H initiated the settlement discussions and proposed the initial agreement, which agreement did not refer specifically to the Farm Plan judgment. The terms of the settlement agreement as stated in the documents prepared by Deere thus mirrored, we believe, A & H's proposed offer rather than introducing new terms as A & H suggests. While it is true that the third letter from Lambert to Deere's counsel does in fact introduce the additional term regarding the Farm Plan judgment, we believe that this additional proposal came after the parties had already entered into a binding agreement.

8. For example, the letter stated that "'[a]t the time that leases are agreed upon and executed, first and last months rental payments will be due and payable to lessor.'" *Crismon v. Western Co. of N. Am.,* 742 P.2d 1219, 1222 (Utah App.1987). Further, the same letter stated, "'Please inform me as to your position regarding the above changes so that we may proceed toward a final agreement on this matter.'" *Id.*

the unsigned settlement agreement. Mr. Lambert's first letter, dated April 10, 1991, included the following relevant portions:

Re: John Deere v. A & H Equipment, et al.

Dear Brent:

I have been asked by my client to propose a settlement with your client in the above referenced case. The settlement proposal is a mutual dismissal with prejudice and general release of claims with each party to bear their respective costs and fees.

As you may know, the defendants have been involved in other litigation and have generally suffered serious financial reversals....

Several parts of this letter are significant. First, Mr. Lambert specifically references the proposed settlement to the John Deere v. A & H Equipment, et al. case. It is undisputed that Farm Plan was not a party to this suit and that it had a separate corporate identity. Second, Mr. Lambert states that he is proposing the settlement at A & H's request, thereby implying some communication between Mr. Lambert and his client as to acceptable terms of the proposed settlement. Third, Mr. Lambert acknowledges in his letter, without being specific, that A & H has been involved in "other litigation." This statement by Mr. Lambert, while not necessarily dispositive of whether he was aware of the Farm Plan judgment, at least indicates his awareness that A & H had been involved in other, potentially unresolved lawsuits. Finally, Mr. Lambert indicates after his signature that he sent a carbon copy of the letter to A & H, thereby putting it on notice as to the proposed settlement offer.

Twelve days after Mr. Lambert's initial letter, counsel for Deere sent Mr. Lambert a letter confirming Deere's earlier telephonic acceptance of A & H's proposed settlement. That letter stated, in relevant part:

Re: John Deere Co. v. A & H Equipment, et al.

Dear [Mr. Lambert]:

This will confirm my telephone conversation of April 15, 1991, in which I accepted your settlement proposal contained in your letter of April 10, 1991. I will prepare the settlement documents and forward them to you for execution.

There are two significant points in this second letter. First, Deere's counsel references the identical case as Mr. Lambert referenced in his letter, i.e., John Deere v. A & H Equipment, et al. Second, counsel for Deere simply states that Deere accepts the settlement proposal as contained in Mr. Lambert's letter; there were no additional terms or conditions proposed by Deere in this letter.

The third relevant document, the unsigned settlement agreement, states in its entirety:

IN CONSIDERATION of the mutual dismissal of the Complaint of John Deere Company (hereinafter the "Plaintiff") and the Counterclaim of A & H Equipment, Inc., Wendell Hansen, Mark B. Anderson, and Vada A. Anderson (hereinafter the "Defendants") Plaintiff and Defendants hereby release and forever discharge the other from any and all claims, demands, damages, actions, causes of action or suits of whatever kind or nature, which now exist of [sic] which may hereafter accrue, because of, for, arising out of or in any way connected with that contractual dispute, the details of which are more fully set forth in the files and records of the District Court of Utah County, in that certain action entitled *John Deere Company, plaintiff v. A & H Equipment, Inc., Wendell Hansen, Mark B. Anderson, and Vada A. Anderson, defendants,* Civil No. CV-89-1151, pending in the Fourth Judicial District Court of Utah County, State of Utah.

The Settling Parties understand and agree that this is a release of all claims and includes but is not limited to contractual claims and profits, claims for damages and claims for both direct and consequential damages of any and all kind or character.

The Settling Parties understand and agree that this settlement is made for the purpose of compromising a disputed claim and shall not be construed as an admission of liability, since any liability is expressly denied.

This Release of All Claims may be executed in counterparts.

Consistent with the two earlier letters, this settlement agreement references only the case of John Deere v. A & H Equipment, et al. None of the three relevant documents names, mentions, or even implies that the Farm Plan judgment, or that Farm Plan itself, is intended to be part of the proposed settlement agreement. Accordingly, these documents establish that both parties initially agreed "to the same thing in the same sense so that their minds [met] as to all the terms." *Crismon*, 742 P.2d at 1221. The result was an agreement binding on both parties.[9] We therefore affirm the trial court's ruling that the parties had a meeting of the minds.[10]

### Settlement Agreement and Rule 4–504

■ Relying on Utah Code Ann. § 78–51–32(2) (1992) and Utah Rule of Judicial Administration 4–504(8), A & H argues that the settlement agreement was unenforceable because it was neither in writing and signed by the parties nor entered into by stipulation of the parties and entered on the minutes of the court.[11] Rule 4–504(8) of the Utah Code of

---

**9.** On the question of whether A & H's excuse for nonperformance was "comparatively substantial," we note that A & H's aversion to performance of the settlement agreement because it failed to include the Farm Plan judgment apparently arises from A & H's misconception that the doctrine of claim preclusion will deprive it of the right to initiate action against Farm Plan on a breach-of-franchise-agreement claim. A & H states in its brief that the settlement agreement, if enforced, would be unconscionable because A & H "will have lost the right to litigate the claims set forth in [its] counterclaim and will also have lost the benefit of the bargain which [it] intended to make, namely, to dismiss [its] obligation on the John Deere Farm Plan judgment."

A & H's argument is misguided. First, it has already lost its right to relitigate the claims underlying the court's award of judgment to Farm Plan. Second, the doctrine of claim preclusion does not prevent A & H from bringing another suit against Farm Plan for breach of the franchise agreement if it is not foreclosed by the existing judgment to Farm Plan. As stated by this court in *Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350 (Utah App.), *cert. denied*, 795 P.2d 1138 (Utah 1990):

Claim preclusion is a branch of the doctrine of res judicata which has three requirements for its application:

"First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits."

*Id.* at 1357 (quoting *Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988)). In a subsequent suit between A & H and Farm Plan, the elements of claim preclusion would not be met. First, the parties would not be the same. Second, the first suit (Deere v. A & H) would not be deemed to have resulted in a "final judgment on the merits" because it would have been resolved by settlement rather than litigation on the merits. Accordingly, A & H could pursue an action against Farm Plan for breach of the franchise agreement, despite the fact that Deere and A & H would have already settled their dispute which involved the same nucleus of operative facts. It is also noteworthy that A & H had no such claims against Farm Plan in this case, either by its cross-claim or a third-party complaint. Therefore, A & H's excuse for nonperformance of the agreement seems comparatively unsubstantial.

**10.** The dissent would have us remand to the trial court for an evidentiary hearing on the meeting-of-the-minds issue. We have rejected that course for two reasons. First, the parties never requested, and have not requested on appeal, that the trial court hold an evidentiary hearing on this issue. The parties submitted the issue to the trial court based on the points raised at oral argument and the letters and affidavits in the record. Our analysis in this case has not deviated from that approach; we have based our decision on a review of the hearing transcript and the relevant documents in the record. To remand for an evidentiary hearing at this juncture would therefore be inappropriate.

Second, a decision to remand this case for an evidentiary hearing would be contrary to the parol evidence rule. "Questions of whether a contract is ambiguous because of uncertain meaning of terms, missing terms, or facial deficiencies are questions of law that must be determined by the court before parol or extrinsic evidence may be admitted to clarify the contractual intent of the parties." *Fitzgerald v. Corbett*, 793 P.2d 356, 358 (Utah 1990) (footnotes omitted).

In the present case, the trial court believed, and we agree, that the relevant documents in this case are clear and unambiguous on their face. Accordingly, the trial court was correct in looking no further than the four corners of these documents in deciding this issue.

**11.** Utah Code Ann. § 78–51–32(2) (1992) states that an attorney has the power to bind a client "in any of the steps of an action or proceeding by his agreement *filed with the clerk or entered upon the minutes of the court*, and not otherwise." *Id.*

The only Utah case to cite this statute is *State v. Musselman*, 667 P.2d 1061 (Utah 1983), which involved an attorney who had forged his client's

Judicial Administration states that "[n]o orders, judgments, or decrees based upon stipulation shall be signed or entered unless the stipulation is in writing, signed by the attorneys of record for the respective parties and filed with the clerk or the stipulation was made on the record." Utah Code Jud.Admin. R4–504(8).

It is undisputed that the attorneys in this case did not file with the clerk or enter upon the minutes of the court the settlement agreement nor did the attorneys of record sign and submit to the court a written stipulation. Accordingly, argues A & H, the settlement agreement is unenforceable.

This court recently decided the question of whether a court can summarily enforce an oral settlement agreement in *Goodmansen v. Liberty Vending Systems, Inc.*, 866 P.2d 581 (Utah App.1993). In *Goodmansen*, the appellants argued, similar to this case, that Rule 4–504(8) of the Code of Judicial Administration precluded enforcement of a settlement agreement. This court ruled, based on the 1991 amendments to Rule 4–504, that Rule 4–504 does not preclude a trial court

from enforcing an oral settlement agreement. *Id.* at 586; [12] *accord Murray v. State*, 737 P.2d 1000, 1001 (Utah 1987) ("[A]greements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds.").[13]

The amendments to Rule 4–504, effective April 15, 1991, included two new provisions. To the "Intent" paragraph was added the following: "This rule is not intended to change existing law with respect to the enforceability of unwritten agreements." *Id.* Furthermore, new subsection ten provides that "[n]othing in this rule shall be construed to limit the power of any court, upon a proper showing, to enforce a settlement agreement or any other agreement which has not been reduced to writing." *Id.* (quoting Utah Code Jud.Admin. R4–504(10)).

Consistent with the holding in *Goodmansen*, we hold that the settlement agreement between A & H and Deere was enforceable despite the fact that it had not been reduced to writing, signed by the parties, and entered on the minutes of the court.[14] Therefore, the

signature to misappropriate the client's funds. However, the *Musselman* court focused on § 78–51–32(3) rather than the quoted language above. The court also noted the long-established rule that attorneys can make procedural decisions in a lawsuit but it is the client's right to make decisions regarding settlement. *Id.* at 1067 n. 8. In the present case, it is clear that A & H empowered its attorney to offer the proposed settlement offer to Deere. Therefore, there has been no usurpation of A & H's power by its attorney.

As § 78–51–32 was first enacted in 1898 and has not been substantively changed since that time, there is no legislative history available from which we might discern legislative intent or the possible interplay between this section and Rule 4–508. We believe, however, that the thrust of § 78–51–32(2) is to give attorneys the power to act on their client's behalf, in most cases without prior consultation, as to those procedural matters of a lawsuit for which attorneys have the expertise and obligation to act in the best interests of their clients. Section 78–51–32(2) protects an attorney from disciplinary action for so acting. We do not believe, however, that § 78–51–32 was intended to void oral settlement agreements. Clearly, the power to settle a lawsuit resides in the client. If a client authorizes the attorney to settle the matter and has expressed an intent to be bound by the attorney's acts, absent a statute of frauds issue, an oral or privately negotiated settlement agreement is as

valid as a signed, written settlement agreement that has been entered on the minutes of the court. *See Murray v. State*, 737 P.2d 1000, 1001 (Utah 1987); *Tracy–Collins Bank & Trust Co. v. Travelstead*, 592 P.2d 605, 608 (Utah 1979); *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584 (Utah App.1993).

12. The *Goodmansen* decision resolved a dispute among panels of this court and thus governs this case by virtue of the doctrine of stare decisis. *State v. Thurman*, 846 P.2d 1256, 1259 (Utah 1993).

13. Neither the duration of the present settlement agreement nor its subject matter brings it within our statute of frauds. *See* Utah Code Ann. § 25–5–1 to –9 (1989).

14. The Utah Supreme Court noted in *Tracy–Collins* that it is not fatal to a settlement agreement that the court has had no opportunity to review the agreement prior to its consideration of the motion to enforce. "The critical issue is whether the court had before it sufficient facts to properly order specific enforcement according to the terms of the agreement. In this respect, the court had before it the agreement itself, and heard oral argument by counsel for both [parties]." *Tracy–Collins*, 592 P.2d at 608.

In the present case, the trial court likewise had before it the relevant letters and documents of

trial court did not err in granting Deere's motion to enforce the settlement agreement.

### Settlement Agreement Entered into by Mistake

■ A & H argues, in the alternative, that if the settlement agreement is enforceable, the trial court's decision to enforce it should still be reversed because A & H's attorney made a unilateral mistake when he communicated the settlement offer to Deere's counsel. A & H maintains that Deere, Deere's counsel, and A & H, but not Mr. Lambert, were aware of the earlier Farm Plan judgment. In addition, A & H contends that Deere and its attorney should have been aware of A & H's probable intent to include the Farm Plan judgment in the settlement agreement. As a result, A & H argues that Mr. Lambert unilaterally erred when he did not specify in his initial settlement proposal to Deere that A & H's offer included a release from the Farm Plan judgment.

Deere, on the other hand, argues that this court should not address A & H's unilateral mistake argument because it failed to raise the issue before the trial court. A review of the trial court's transcript of oral argument on the motions arguably supports Deere's assertion. At oral argument, Mr. Lambert discussed three issues with the court: (1) cross-claims and setoffs; (2) limited authority of attorneys; and (3) meeting of the minds. On the third issue, meeting of the minds, Mr. Lambert focused on the failure of the parties to reach a meeting of the minds, rather than on Mr. Lambert's own unilateral mistake. We agree with Deere that A & H did not properly raise this issue at the trial court below and is therefore precluded from arguing it on appeal. *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993) (general rule is to decline consideration of issues raised for first time on appeal).[15]

### Ambiguity of Settlement Agreement

■ A & H finally asserts that if there was an agreement, its terms were ambiguous and the trial court should not have enforced it without conducting an evidentiary hearing. Specifically, A & H emphasizes the following language of the trial court's ruling:

> And based on the letter, your letter, and in view of the pleadings in this case, which I have reviewed, and the *posture of these parties,* it appears evident to the Court that the only thing that reasonably could have been contemplated is that it involved a general release of claims of each party with respect to the matter that is pending before the Court in this action.

(Emphasis added.) A & H argues that the trial court's reference to the "posture of the parties," clearly shows its belief that the letter was unclear and ambiguous. Deere's counter argument is that by referring to the "posture of the parties," the trial court was not referring to any ambiguity in the letter; rather, it was simply noting the fact that Farm Plan, as an unnamed party to the action, could not be forced to join into the settlement agreement. Furthermore, Deere argues that the settlement agreement is clear and unambiguous, that it clearly contemplates a settlement of claims between only the parties to the instant suit—A & H and Deere.

This court has previously noted that

> [l]anguage in a written document is ambiguous if the words used may be understood to support two or more plausible meanings. A court is justified in determining that a contract or order is ambiguous if its terms are either unclear or missing. However, the mere fact that the parties interpret the language differently does not, per se, render the writing ambiguous.

*Whitehouse v. Whitehouse,* 790 P.2d 57, 60 (Utah App.1990) (citations omitted).

---

the parties and heard oral argument by counsel for both sides. We believe that the trial court thus had before it sufficient facts to properly order specific enforcement of the settlement agreement.

**15.** We further note that the trial court determined that A & H and Deere reached a meeting of the minds regarding the settlement. This determination is inconsistent with a claim of unilateral mistake by Mr. Lambert. In other words, any misapprehension by Mr. Lambert is irrelevant because the settling parties had arrived at an agreement regarding settlement terms.

In the present case, we conclude that the language in the first two letters and the settlement document does not support two or more plausible meanings.[16] In addition, we believe that the letters and document are clear and do not hint of any missing terms. Consequently, the trial court did not err in concluding that the settlement agreement between the parties was unambiguous and in summarily enforcing it.

## CONCLUSION

After reviewing the record in this case, we cannot say that the trial court abused its discretion in summarily enforcing the settlement agreement between the parties or that its legal conclusions were erroneous. Accordingly, we affirm the trial court's decision.

BILLINGS, J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. I believe that the trial court improperly held, as a matter of law, that these parties had a meeting of the minds. Because this is a fact sensitive threshold issue, I would remand this case to allow the parties to present evidence as to whether there was a meeting of the minds.

The main opinion erroneously asserts that the parties never urged, at trial or on appeal, that the trial court should take evidence on the meeting-of-the-minds issue. At the hearing before the trial court, A & H Equipment, Inc. (A & H) asked the court to enforce the settlement agreement consistent with A & H's interpretation and, in the alternative, urged that there was no meeting of the minds. In support of the alternative argument, A & H contended that *Brown v. Brown*, 744 P.2d 333 (Utah App.1987) involved a similar "fact sensitive" issue, which was "exactly analogous to this case." If the trial court did not rule for A & H as a matter of law, A & H urged the court to take evidence on the fact sensitive meeting-of-the-minds issue.

On appeal, A & H abandoned its argument regarding the enforceability of its own interpretation of the settlement agreement (as a *matter of law*), asserting only its alternative theory that there was no meeting of the minds. Specifically, A & H argued:

> The trial court took no evidence other than to consider the affidavit by defendants' counsel. The trial court did not resolve this ... factual issue by receiving evidence, but summarily decided the issue based upon the memoranda and oral arguments of the respective counsel. The trial court's action in failing to take evidence on an issue of fact is reversible error. This court, therefore, should reverse the trial court's summary enforcement of the proposed settlement agreement and remand for trial.

A & H clearly requested this court to remand the case for a factual determination. Thus, A & H requested, both in the trial court and this court, a factual determination of the meeting-of-the-minds issue.

The trial court summarily ruled, as a matter of law, that there was a meeting of the minds as to the settlement agreement. The trial court took no evidence regarding the parties' perceptions of the scope of the settlement agreement.[1] Determining whether there was a meeting of the minds in the present case requires a factual inquiry. The trial court's ruling on this fact sensitive issue, as a matter of law, was improper. *See, e.g., Canfield v. Albertsons, Inc.*, 841 P.2d 1224, 1228 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993). I would therefore remand this case to allow the parties to present evidence as to whether there was a meeting

---

16. See our earlier discussion in footnote six, *supra*, regarding the definition of the term "claims."

1. However, A & H's attorney filed an affidavit stating that his clients had informed him that they were not willing to dismiss their counterclaim against John Deere unless John Deere re-linquished all its matters against A & H. "If there was evidence from which it would be reasonable to find that there was [no] meeting of the minds, the decision [decided as a matter of law] cannot be sustained." *R.J. Daum Constr. Co. v. Child*, 122 Utah 194, 196–97, 247 P.2d 817, 818 (1952).

of the minds.[2]

---

**2.** I disagree with the main opinion's assertion that remanding this case "would be contrary to the parol evidence rule." If the parties had both signed a document, that document would be controlling, and we would look to extrinsic evidence only if that document was ambiguous. *See Krauss v. Utah State Dep't of Transp.*, 852 P.2d 1014, 1019 (Utah App.), *cert. denied*, 862 P.2d 1356 (Utah 1993). However, where a document has not been signed by both parties, and they reasonably interpret their purported agreement differently, a trial court may look to extrinsic evidence to determine whether there was ever a meeting of the minds.