**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NANCY ALIREZ JOHNSON,

      Plaintiff-Appellant,

and

KARLEEN VAROZ MITCHELL,

      Plaintiff,

v.

UTAH STATE TAX COMMISSION,

      Defendant-Appellee.

No. 99-4167
(D.C. No. 94-CV-576)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **BALDOCK** , **McKAY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Nancy Alirez Johnson appeals from the district court's order granting the Utah State Tax Commission's motion to enforce a settlement of this case, and dismissing the case with prejudice. We affirm.

Johnson and her co-plaintiff, Karleen Varoz Mitchell, brought this Title VII action in state court against the Commission. Their complaint charged that the Commission had discriminated against them by denying them promotions by virtue of their race (Hispanic) and their religion (Catholic). The complaint also charged that the Commission had retaliated against plaintiffs after they filed a charge of discrimination with the Utah Anti-Discrimination Division. The Commission removed the action to federal court.

Discovery proceeded and a trial date was scheduled for January 25, 1999. On January 15, 1999, the parties reached the alleged settlement. After Johnson repudiated the settlement, her attorney withdrew from representing her and the Commission filed its motion to enforce. The district court held an evidentiary hearing and ordered enforcement of the settlement.

We review the district court's order enforcing a settlement agreement for abuse of discretion. See United States v. Hardage, 982 F.2d 1491, 1495 (10th Cir. 1993). "An abuse of discretion occurs only when the trial court based its

decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." Wang v. Hsu, 919 F.2d 130, 130 (10th Cir. 1990) (further quotation omitted). Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law. See Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996). This is true even, as here, where the underlying cause of action is federal. See United Commercial Ins. Serv. Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992).

Utah law favors voluntary settlement of legal disputes. See Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc., 781 P.2d 478, 479 (Utah Ct. App. 1989). A court may enforce a settlement agreement, however, only if there is an enforceable contract. See John Deere Co. v. A & H Equipment, Inc., 876 P.2d 880, 883 (Utah Ct. App. 1994). Unwritten or unsigned settlement agreements are enforceable contracts, absent proof of a violation of the statute of frauds. See Goodmansen v. Liberty Vending Sys., Inc., 866 P.2d 581, 584-85 (Utah Ct. App. 1993).

Johnson argues that she never agreed to a settlement. She raises three arguments in support of this contention. First, she argues that correspondence between the parties shows that only an offer, rather than a binding contract, was made on January 15, 1999. Second, she argues that if her attorneys accepted the offer on January 15, 1999, they did so without express or apparent authority.

-3-

Finally, she claims that the parties continued to negotiate after January 15, 1999, negating the contention that a contract had been formed as of that date. We consider each of these arguments in turn.

Both parties to this appeal rely upon a letter faxed at 6:55 p.m. on January 15, 1999, from Don Hansen, attorney for the Commission, to Johnson's counsel. This letter states as follows:

> This will confirm our conversation of minutes ago in which we agreed, with our clients' consent, to settle the above civil action in its entirety for both plaintiffs for the sum of $77,500.00, and promotion of Kathleen Mitchell to Tax Compliance Agent III at a rate of $14.79 per hour. Again, this settlement is subject to final approval by Administrative Services. Additionally, Nancy Johnson is able to apply for new state employment when she is able to do filing [sic] her application through the DHRM Resumex system. Our office will prepare the release and dismissal documents and transmit them to you early next week for your review. With your permission, we will also notify Judge Kimball's clerk next Tuesday of the settlement.
>
> I encourage you and your clients to give this offer you [sic] most serious consideration. We will await your response, which I ask that you provide at your earliest opportunity, in light of the rapidly approaching trial date. Please call if you have any question on this matter. Your cooperation in this matter is appreciated.

R. Vol. V, doc. 116, ex. A. [1]

The Commission relies primarily on the first paragraph of this letter, which describes the matter as settled, while Johnson emphasizes the second paragraph,

---

[1]    Administrative Services later gave its consent to the contract, thus fulfilling that condition to its validity.

which suggests that only an offer has been made. We need not consider the letter in isolation, however, because there is other evidence concerning acceptance of the offer.

We consider, first, Johnson's statements to the district court about what transpired on January 15, 1999. The first such statement is found in her response to her attorney's motion to withdraw from the case. There, she admitted that in response to pressure from her attorney, "both plaintiffs made a verbal agreement to accept this offer." R. Vol. V, doc. 120 at 1. She further stated that her disagreement with the wording of the release of all claims later "prevented me from signing the documents *I had verbally agreed to sign*." Id. (emphasis added). [2] Second, in her affidavit in opposition to enforcement of the settlement, Johnson explained, "Facing the threat of Mr. Chamness leaving the case and attaching my property or liening my case, *I tentatively agreed to the offer*, but told Mr. Chamness that I needed to think about the offer further." Id. doc. 125, ex. D at 2, ¶ 6 (emphasis added). [3] By the time of the evidentiary hearing,

---

[2] Johnson fails to show that any disagreement or continued negotiation concerning the wording of the release meant that there was no meeting of the minds sufficient to form a settlement agreement. Her attorney testified that the modifications to the release agreement in subsequent negotiations did not alter the essential terms of the agreement. See R. Vol. VI at 20.

[3] We have been unable to locate exhibit "D" to this pleading in the record provided to us by the district court. However, both parties quote paragraph six of the exhibit in their briefs, and we have relied on their account. See Appellant's

(continued...)

however, Johnson was claiming that she had not accepted the offer at all. Id. Vol. VI at 62.

Mr. Chamness testified at the evidentiary hearing that Johnson had agreed to the settlement on January 15, and that he had communicated her agreement to the Commission's attorney. See id. at 15. Chamness stated that he considered the oral agreement to be a binding settlement agreement. See id. at 16. Although Johnson expressed some unhappiness with the settlement, she did not apply any conditions to her acceptance of the settlement, and her statements about needing additional time came *prior* to her agreement to the settlement. See id. at 18.

Faced with conflicting evidence, the district court made a factual finding that Johnson agreed to accept the proffered settlement. This finding of fact is not clearly erroneous. See Fed. R. Civ. P. 52(a). Although Johnson expressed some displeasure with the settlement, the evidence supports the district court's finding that there was a meeting of the minds as to the essential terms of the agreement and that the parties entered into a valid oral contract to settle this action. See John Deere , 876 P.2d at 884 (stating "meeting of the minds" standard).

Johnson next argues that her attorney lacked express or apparent authority to accept the settlement on her behalf. "Once it is shown that an attorney has

---

[3](...continued)
Opening Br. at 4; Appellees' Br. at 8-9.

entered into an agreement to settle a case, a party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given." Turner v. Burlington N. R.R., 771 F.2d 341, 345-46 (8th Cir. 1985).

The evidence here shows that Johnson's attorney did have express authority to settle the case. "If a client authorizes the attorney to settle the matter and has expressed an intent to be bound by the attorney's acts . . . an oral or privately negotiated settlement agreement is as valid as a signed, written settlement agreement that has been entered on the minutes of the court." John Deere, 876 P.2d at 887 n.11. Johnson's attorney stated at the evidentiary hearing that he presented the offer to Johnson, that she agreed to it, and that he believed that he had Johnson's express authority to settle the action on the terms proposed. As noted, Johnson stated that she agreed to the verbal settlement of the action. The evidence is sufficient to establish that Johnson's attorney had express authority to accept the settlement agreement on her behalf.

Finally, Johnson argues that the parties continued to negotiate after the alleged settlement had been reached, thus proving that there had been no settlement. The district court found that "[t]he fact that Plaintiffs' counsel made efforts to resolve the matter even after January 15, 1999, is not material and does not prove that a contract had not been formed by that date, especially in light of

Defendant's refusal to negotiate." R. Vol. V, doc. 132 at 2. We agree. In light of the evidence of record, the district court could reasonably conclude that the subsequent, apparently one-sided negotiations demonstrated that "the parties initially had a meeting of the minds and that [Johnson] subsequently changed [her] mind." John Deere , 876 P.2d at 884.

The district court did not abuse its discretion in enforcing the settlement agreement in this case. Therefore, the judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge